```
                        IN THE
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,          CRIM. NO. 02-30043-MAP

         Plaintiff,

V.

IVAN TELEGUZ,

         Defendant.                JANUARY 12, 2006
```

### DEFENDANT, IVAN TELEGUZ'S, MOTION FOR JUDGMENT OF ACQUITTAL WITH POINTS & AUTHORITIES

NOW comes the defendant, IVAN TELEGUZ, by and through his attorney, DAVID J. WENC, and respectfully requests that this Honorable Court, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, enter a judgment of acquittal in this case on Counts One, Two, Four, Five and Six based upon the insufficiency of the evidence introduced by the government. Defendant submits that no rational trier of fact could find the government's evidence supported a finding of guilt beyond a reasonable doubt.

Although deferential, a court's review for sufficiency of the evidence under Rule 29 does not amount to a rubber-stamping of the jury verdict. Evidence is insufficient when it "'is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt.'" *See,* United States v. Gaviria, 740 F.2d 174, 184 (2d Cir. 1984) (quoting United States v. Johnson, 513 F.2d 819, 824 (2d Cir. 1975).

This principle is dispositive here. The evidence in this case is consistent with both innocence and guilt. Therefore, it cannot support a conviction. This Court should enter a judgment of acquittal on all counts of the second superseding indictment, which charge IVAN TELEGUZ with a federal crime.

In support of this motion, defendant submits the following points and authorities.

## I. DISCUSSION

The issue for this Court's review is whether a rational fact finder could conclude, beyond a reasonable doubt, that the government proved the elements of the crime. *United States v. Moran*, 312 F.3d 480, 487 (1st Cir. 2002).

### A. Standard and Scope of Review

An appeals court reviews Rule 29 determinations *de novo*. *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997). At both the trial and appellate level, a court must determine "whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational fact finder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." *United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir. 1994). Under this formulation, a court considers all the evidence, direct and circumstantial, and resolves all evidentiary conflicts in favor of the verdict. *Carroll*, 105 F.3d at 742.  Thus, we do not weigh the credibility

of the witnesses or "assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence." *United States v. Rivera-Ruiz*, 244 F.3d 263, 266 (1st Cir. 2001) (internal quotation indication omitted). Accordingly, as long as the guilty verdict finds support in a "plausible rendition of the record," it must stand. *United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir. 1992).

With this standard and scope of review in mind, the evidence produced by the government in this case as to Counts One, Two, Four, Five and Six is insufficient as a matter of law.

## B. No Conspiratorial Agreement in a Simple Buyer-Seller Relationship

The distinguishing feature of a conspiracy is the agreement to violate the law. *Ianelli v. United States*, 420 U.S. 770, 777 (1975); *Braverman v. United States*, 317 U.S. 49, 53 (1942). If there is no meeting of the minds, there is no conspiracy. *United States v. Rosario-Diaz*, 202 F.3d 54, 64 (1st Cir. 2000). Where the buyer's purpose is merely to buy and seller's purpose is merely to sell, and no prior or contemporaneous agreement existed between the two persons, no conspiracy exists even though both are aware of the illegal nature of the transaction. *United States v. Burroughs*, 830 F.2d 1574, 1581 (11th Cir. 1987). A case, which illuminates the evidence amounting to a conspiratorial agreement, is found in *United States v. Moran*, 984 F.2d 1299 (1st Cir. 1993). Moran was convicted of conspiracy to distribute cocaine primarily on the testimony of an informant who

related conversations he had with Moran in which Moran described his dealings with a wholesaler. The First Circuit found that sufficient evidence of "jointness", that is, common knowledge, interdependence, and shared purpose. The evidence presented a "picture of a continuing sale-for-resale relationship" in that the wholesaler and Moran each had a stake in the venture. Moran could profit directly from the sales of the drugs he obtained from the wholesaler, while the wholesaler would profit indirectly by having Moran as one of his drug distribution channels.

### 1. Count One

In the case at bar, the simple buyer-seller relationship between Ivan Teleguz and Michael Quickel did not establish a conspiracy. For example, on July 16, 2002, the government alleged that Alex Safanov and Ivan Teleguz sold four guns to Carlos Ortiz.[1] Two of the guns were purchased by Ivan Teleguz from Michael Quickel in Pennsylvania. However, the government presented no evidence that Quickel knew that the firearms would be resold by Teleguz. In sharp contrast to Moran, there was no evidence of "jointness", namely, there was no evidence presented of common knowledge or shared purpose between Teleguz and Quickel. Instead, Quickel sold guns to Teleguz, who in turn sold the guns to others without the knowledge of Quickel.

On June 24, 2002, the government alleged that Safanov and Teleguz sold Ortiz four firearms in Pennsylvania.[2] To the extent

---

[1] The government presented no evidence that Teleguz and Safanov conspired to sell four guns to Ortiz on July 16, 2002. Instead, the evidence at trial showed that Safanov alone sold four guns to Ortiz. Govt. Ex(s) 34 & 35.
[2] The government produced evidence at trial that Teleguz sold guns to Safanov, not Ortiz. Safanov then sold the guns to Ortiz. SA Winfield or SA Lewis

that the government produced evidence that Teleguz obtained the firearms from Quickel, then that fact is of no consequence to the finding of a conspiracy. The relationship between Teleguz and Quickel remained that of a simple buyer-seller. The government elected not to provide the jury with any evidence that Quickel knew that the firearms he sold to Teleguz were to be resold by Teleguz or that Quickel shared the same purpose with Teleguz.

On August 25th, August 30th and October 3rd of 2002, the government alleged that Teleguz sold guns to Ortiz. On each occasion, the government alleged that the guns were purchased by Teleguz from Quickel in Pennsylvania. Despite these allegations, the government's evidence at trial presented nothing more that a simple buyer-seller relationship between Teleguz and Quickel. The mere sale of guns from Quickel to Teleguz did not establish a conspiracy to deal firearms. The government must prove an agreement between the seller and the buyer to further deal the guns in order to prove a conspiracy. <u>United States v. Lennick</u>, 18 F.3d 814, (9th Cir. 1994). The government failed in its' proof.

## C. No Conspiratorial Agreement<br>By Mere Knowledge, Acquiescence, Association or Presence

The agreement element is not proven by mere knowledge of illegal activity, by mere association with a conspirator, or by mere presence at the scene of conspiratorial activity. <u>United</u>

---

testified that Ortiz paid Alex Safanov $2,250.00 for the guns and accessories on June 24, 2002. Teleguz merely sold the guns to Safanov. The government presented that no evidence that Teleguz knew Safanov would sell the guns to Ortiz. There was no evidence of "jointness" or a shared purpose.

States v. Thomas, 8 F.3d 1552 (11th Cir. 1993); United States v. Zafiro, 945 F.2d 881 (7th Cir. 1991), aff'd, 113 S.Ct. 933 (1993). Each of these factors may be relevant but, without more evidence, will not support a conspiracy conviction.

### 1. Count Two

In the case at bar, the government alleged that on July 16, 2002, Safanov and Teleguz sold Ortiz three guns, which had obliterated serial numbers.[3] In support of its' claim, the government produced evidence of Teleguz's statement to SA Lew. The government argued that Teleguz's statement to SA Lew that "it was Alex Safanov who was taking the numbers off the guns" showed knowledge. However, the government produced no evidence as to **when** Teleguz knew that the serial numbers of the guns were obliterated. Teleguz's January 28, 2004 statement to SA Lew is neutral. Did Teleguz learn of the obliteration after the fact or before? If he learned of the obliteration after the fact, then was there an agreement with another to possess firearms with obliterated serial numbers? Teleguz may have associated with Safanov. He may have even known of Safanov's illegal activity. Nonetheless, there was no evidence of agreement by Teleguz with Safanov to accomplish the specific illegal objective of possessing firearms with obliterated serial numbers. United States v. Lennick, supra.

On August 25th and August 30th of 2002, Teleguz allegedly operated alone. Neither Safanov nor Zhirnov were in the picture on these dates. To the extent the government sought to implicate

---

[3] See, footnote #1, supra.

Teleguz with Quickel, then where's the evidence that Quickel and Teleguz agreed that the guns would be possessed with obliterated serial numbers? There is no such evidence. Failure to prove this agreement is fatal to the government's conspiracy charge in Count Two.

### a. Possession of a Firearm

In the case at bar, the government produced no evidence that Teleguz "possessed" the firearm that Zhirnov sold to Ortiz on October 3, 2002.

### D. No Knowledge of Obliterated Serial Numbers

This Court instructed the jury that "[f]or you to find the defendant guilty of the crime [Possession of a Firearm with an Obliterated Serial Number], you must be satisfied that the government proved each of the following things beyond a reasonable doubt: First, that Mr. Teleguz knowingly possessed a firearm described in the count [Four, Five and/or Six] . . . Third, that Mr. Teleguz acted knowingly, meaning that he knew the serial number had been obliterated."

This Court went on to define "[t]he word 'knowingly' [to mean] that the act was done voluntarily and intentionally, not because of mistake or accident. Whether the defendant acted knowingly may be proved by the defendant's conduct and by all of the facts and circumstances surrounding the case. In deciding whether the defendant acted knowingly, you may infer that the defendant had knowledge of a fact if you find that he

deliberately closed his eyes to a fact that otherwise would have been obvious to him."

In the case at bar, the government alleged that Teleguz knowingly possessed firearms with obliterated serial numbers. However, there was no direct evidence of knowledge except for the statement to SA Lew, which has been addressed above. Moreover, there was no circumstantial evidence of knowledge presented by the government. To the extent that the jury relied upon the "deliberate ignorance" basis as proof of knowledge, then that reliance was unsupported by the evidence. In order to support a finding of knowledge based upon "deliberate indifference", then the government must produce evidence that the defendant purposely contrived to avoid learning an incriminating fact. <u>United States v. Threadgill</u>, 172 F.3d 357 (5th Cir. 1999); <u>United States v. Rivera</u>, 944 F.2d 1563 (11th Cir. 1991). No such evidence of "contrivance" was presented by the government in this case.

## II. <u>CONCLUSION</u>

For all of the above reasons, the defendant IVAN TELEGUZ, requests that this Court enter a judgment of acquittal on Counts One, Two, Four, Five and Six.

```
                            Respectfully Submitted,

                            DEFENDANT, IVAN TELEGUZ,



                        By: /s/ David J. Wenc
                            David J. Wenc, His Attorney
                            WENC LAW OFFICES
                            44 Main Street
                            Windsor Locks, CT 06096-0306
                            Tel. (860) 623-1195
                            BBO# 549400
```

## CERTIFICATION

I hereby certify that on January 12, 2006 I served a copy of the foregoing motion via CMECF, to all counsel of record.

```
                            /s/ David J. Wenc
                            David J. Wenc, ESQ.
```