UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
                         )
VS.                      )    NO. 02CR30043-02 (MAP)
                         )
                         )
IVAN TELEGUZ             )
                         )

SENTENCING MEMORANDUM
ON BEHALF OF IVAN TELEGUZ

Through counsel, IVAN TELEGUZ, files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

TELEGUZ respectfully requests that the Court consider several important circumstances of this case in fashioning a sentence. First, TELEGUZ'S Extraordinary Family Situations or Responsibilities. Second, TELEGUZ'S punishment via collateral consequences, such as deportation. Third, TELEGUZ'S status as an alien will subject him to more severe prison conditions than a non-alien. Fourth, TELEGUZ'S lack of credit on BICE detainer. Fifth, TELEGUZ'S lengthy incarceration will impose substantial costs to the taxpayers. Sixth, TELEGUZ'S

1

entrapment for sentencing purposes. Seventh, TELEGUZ'S assimilation into American culture. Eighth, TELEGUZ'S totality of circumstances justifies a downward departure.

These circumstances alone warrant a sentence substantially below that provided for by the sentencing guidelines. But what is truly extraordinary here is that an opportunity has arisen for the Court to fashion a sentence that, in addition to punishing TELEGUZ, directly benefits the community. This opportunity involves imposing a term of imprisonment and home detention, and a requirement that TELEGUZ work full-time.

## Sentencing under *Booker*

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that

2

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.[1]

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." I d. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker,

> requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a) (4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).

---

[1] It should be noted that the fact-of-prior-conviction exception to the Apprendi rule is based on Almendarez-Torres v. United States, 523 U.S. 224 (1998). But the continued vitality of this case and the exception it created has been called into question not only by the broad reasoning of Booker itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by Shepard v. United States, 125 S. Ct. 1254 (2005). Shepard sharply limits the Almendarez-Torres exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records. As Justice Thomas notes, moreover, five justices agree that Almendarez-Torres was wrongly decided. 125 S. Ct. at 1264 (Thomas, J., concurring).

Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

> 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1);
> 2) "the kinds of sentences available" (§ 3553(a)(3);
> 3) "the need to avoid unwarranted sentence

4

>    disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6); and
> 4) "the need to provide restitution to any victims of the offense." (§ 3553(a) (7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate <u>means</u> of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See*

5

U.S.S.G. § 5H1. <u>See also</u> <u>United States v. Nellum,</u> 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May (2004); <u>United States v. Naylor,</u> __ F. Supp. 2d __, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in <u>Roper v. Simmons.</u> 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of <u>Booker</u> and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in <u>Booker,</u> rejecting mandatory guideline

6

sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United States v. Jaber, __F. Supp.2d __, 2005, WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). See also, United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere

7

> within the statutory range. If the
> majority thought otherwise — if it
> thought the Guidelines not only had to
> be `considered' (as the amputated
> statute requires) but had generally to
> be followed — its opinion would surely
> say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of

8

sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

Application of the Statutory Sentencing Factors
to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender

   (a) Nature and Circumstances of Offense

   The nature of the conspiracy in this case was to sell firearms to Carlos Ortiz, an informer, working for the FBI.

   (b) History and Characteristics of Mr. Teleguz

   Mr. Teleguz came to the United States in 1990 with his parents. The Teleguz family included 10 children in addition to Ivan. In 2003, Mr. Teleguz married Olga Leontyuk. He supported himself as a stucco craftsman and plasterer. In 2004, Mr. Teleguz was arrested for the instant charges. Later on that year, Mr. Teleguz was arrested for a Virginia state murder-for-hire case. Mr. Teleguz was subsequently convicted of the murder-for-hire of Stephanie Sipe, a former

9

girlfriend. Mr. Teleguz and Ms. Sipe had one child born of their relationship. The child's name is Zachary, who is currently six years old.

2. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:

   (A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3. The Kinds of Sentences Available

In <u>Booker,</u> the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. <u>Booker.</u> 125 S. Ct. at 756. This renders the sentencing guidelines advisory. Id. 18 U.S.C. §§ 3551, 3559, 3561, 3571, 3581 provide this Court with the types of available sentences based upon defendant's conviction.

This case involved offenses committed pre-<u>Booker</u>. The

10

Court should consider the due process/ex post facto issue that the sentence cannot exceed the top of the guideline range as calculated on the basis of facts proven to the jury or admitted by the defendant.

4. The Sentencing Range Established by the Sentencing Commission

The correct guideline range under the provisions of the guidelines is as follows: (1) The Total Offense Level should be 22. With a Criminal History category of I,[2] Mr. Teleguz's guideline sentencing range should be 41-51.

### A.

### Mitigating Factors

1. TELEGUZ'S EXTRAORDINARY FAMILY SITUATIONS OR REPONSIBILITIES.

    a. Permissible justifications for downward departure are the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties. See, United States v. Milikowsky, 65 F.3d 4, 8 (2d Cir. 1995) and United States v. Rivera, 994 F.2d 942, 952-54 (1st Cir. 1993).

---

[2] Mr. Teleguz is yet to be sentenced on the murder-for-hire conviction in Virginia. Therefore, his conviction in Virginia can only be counted as a "prior sentence" under USSG Sec. 4.1(c). One criminal history point instead of three is justified pursuant to USSG Sec. 4.1.2(a)(4). The USPO's interpretation of Virginia state law relating to capital murder sentences makes no sense. If an automatic life sentence kicks in at the date of conviction, then why have a judge impose another sentence months later. Moreover, counsel is unaware of any final judgment entering in the case until the state judge imposes sentence on May 8th.

    b. In the case at bar, Mr. Teleguz comes from a large family with a legacy of farming. Mr. Teleguz was a key worker for his family both in the Ukraine and in the United States. PSR, paragraphs 77-79. His mother and father, who are in their sixties, count on him. His wife cares very deeply for him. A lengthy incarceration may have a destructive effect on innocent individuals such as the parents and the wife.

2.     TELEGUZ'S PUNISHMENT VIA COLLATERAL CONSEQUENCES, SUCH AS DEPORTATION, IS INEVITABLE.

    a. In <u>United States v. Alvarez-Cardenas</u>, 902 F.2d 734 (9th Cir. 1990), the court held that a defendant's conviction which would result in deportation was not a ground for departure. However, in light of <u>Koon</u> and <u>Booker</u>, the Alvarez-Cardenas result may be different. In <u>United States v. Biheiri</u>, 356 F.Supp.2d 589 (E.D. Va. 2005), the court held, post-Booker, that a sentence far below the advisory guideline was justified because Biheiri would "be deported following his release from confinement. . . [t]he goals of protecting the public and providing rehabilitation opportunities are of little import."

    b. In the case at bar, Mr. TELEGUZ will be deported

12

after he serves his sentence unless put to death in Virginia or his direct appeal and collateral attacks of the Virginia conviction fail. A long sentence may not be appropriate given the fact that the goals of protecting society and providing rehabilitation are of little import here.

3. TELEGUZ'S LACK OF CREDIT ON BICE DETAINER.

   a. In <u>United States v. Camejo</u>, 333 F.3d 669 (6th Cir. 2003) the court held that where the defendant was an alien who pled guilty to assault and who remained in INS detention for two years before trial, the district court is empowered to downward depart to give credit to the defendant because the guidelines do not forbid this factor.

   b. In the case at bar, the Bureau of Immigration and Customs Enforcement (BICE) has lodged a detainer against Mr. Teleguz. To the extent that he has been in BICE custody at any point in his detention, then this Court should consider departing downward to reflect "credit".

4. TELEGUZ'S STATUS AS AN ALIEN WILL SUBJECT HIM TO MORE SEVERE PRISON CONDITIONS THAN A NON-ALIEN.

   a. In <u>United States v. Bakeas</u>, 987 F.Supp (D. Mass. 1997) the court departed from 12 months to a

      probationary sentence and home confinement for a legal resident alien convicted of embezzlement because he was ineligible for minimum security confinement. In addition, a deportable alien is ineligible for home detention, community confinement, work release, intermittent incarceration, or a minimum security designation. See, United States v. Farouil, 124 F.3d 838 (7th Cir. 1997).

  b. In the case at bar, Mr. Teleguz will face severe restrictions as a deportable alien including but not limited to ineligibility for a six month halfway house at the end of his sentence. See, United States v. Navarro-Diaz, 420 F.3d 581 (6th Cir. 2005).

5. **TELEGUZ'S LENGTHY INCARCERATION WILL IMPOSE SUBSTANTIAL COSTS TO THE TAXPAYERS.**

  a. In United States v. Moreland, 366 F.Supp.2d 416, 422 (S.D.W.Va. 2005) the court held that where a defendant was convicted of possession of 8 grams of crack for sale and where he was a career offender with guidelines of 360 months to life, a non-guideline sentence of a 10 year mandatory minimum was sufficient in part because "to impose a sentence which is 20 years longer would cost the

14

      taxpayers more than a half a million dollars.

  b. In the case at bar, the advisory guideline range is between 46-57 months. The cost of Mr. Teleguz's incarceration within this range will be staggering.

6.    TELEGUZ'S ENTRAPMENT FOR SENTENCING PURPOSES.

  a. Even though a defendant was not entrapped in the legal sense, a court can appropriately depart downward under USSG Sec. 5K2.12 where the trial court was troubled by "aggressive encouragement of wrongdoing [by the informer], "prosecutorial misconduct and vindictive prosecution." <u>United States v. Garza-Juarez</u>, 992 F.2d 896, 910-912 & n. 2 (9th Cir. 1993). Sentencing entrapment is a viable ground for downward departure. See, <u>United States v. Searcy</u>, 233 F.3d 1096, 1099 (8th Cir. 2000) and <u>United States v. Montoya</u>, 62 F.3d 1, 3-4 (1st Cir. 1995). See also, USSG Sec. 2D1.1, comment (nn. 12, 15).

  b. In the case at bar, the transcripts of secret recordings are full of efforts by Carlos Ortiz to buy more firearms and to buy firearms with obliterated serial numbers. BUT FOR the urgings of Ortiz the number of firearms would be less.

15

>    In addition, the number of firearms with obliterated serial numbers would be zero. This court should depart downward to neutralize the 8 level adjustments upward given to the defendant in the PSR.

7. TELEGUZ'S ASSIMILATION INTO AMERICAN CULTURE.

   a. The court has authority to depart downward on the ground that the defendant had "culturally assimilated" into American society. See, <u>United States v. Lipman</u>, 133 F.3d 726 (9th Cir. 1998) and <u>United States v. Castillo</u>, 386 F.3d 632 (5th Cir. 2004).

8. TELEGUZ'S TOTALITY OF CIRCUMSTANCES JUSTIFIES A DOWNWARD DEPARTURE.

   a. Since Mr. TELEGUZ committed his crimes before October 27, 2003, the caveat for departure under U.S.S.G. Section 5K2.0 (c), does not apply. In <u>United States v. Rivera</u>, 994 F.2d 942 (1st Circuit 1993), Justice Breyer stated that a district court has a "better feel" for the unique circumstances of the case, including a combination of factors, such as the overstated loss, the seriousness of the defendant's conduct, the restitution paid, and no personal benefit. As a result a 7-level departure is justified.

16

b. In the case at bar, a "combination of the factors" listed above indicate that a departure is appropriate in Mr. TELEGUZ'S case.

The advisory guideline range in this case does not adequately reflect the defendant's personal history, immigration consequences, cost of incarceration sentencing entrapment.

5. The Need To Avoid Unwarranted Disparities

In Section 14 supra, the defendant discussed the practicalities of his sentence as an alien. The Court is directed to Section 14 to consider the "disparity" factor.

6. The need to provide restitution to any victims of the offense.

## Conclusion

For the foregoing reasons, Mr. Teleguz respectfully submits that a sentence of 41-51 months or less is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

                              Respectfully submitted,
                              DEFENDANT, IVAN TELEGUZ,

                              By: /s/ David J. Wenc
                                  David J. Wenc, His Attorney
                                  WENC LAW OFFICES
                                  44 Main Street
                                  Windsor Locks, CT  06096
                                  Tel. (860) 623-1195
                                  BBO# 549400

**CERTIFICATION**

    I hereby certify that on April 30th, 2006 I served a copy of the foregoing by mailing same via CMECF, to all defense counsel of record and:

USPO Richard Rinaldi  
U.S. Probation Office  
1550 Main Street, Room 212  
Springfield, MA 01103

/s/ David J. Wenc  
David J. Wenc, ESQ.